[No. 19764.   Department Two. — December 8, 1887.]

## CALIFORNIA ANNUAL CONFERENCE OF THE METHODIST EPISCOPAL CHURCH, Respondent, *v.* CHRISTY SEITZ, Appellant.

Lease— Covenant to Purchase Buildings — Assignment by Lessee.— An owner of land having buildings thereon belonging to another executed a lease of the land to the latter, which contained a provision giving the lessee the option at the expiration of the term either to remove the buildings or to require the lessor to purchase them at an ascertained valuation.  Afterwards the lessee, with the consent of the lessor, assigned all his right, title, and interest in the lease.  *Held*, that the assignment transferred to the assignee the ownership of the buildings and the right to compel the lessor to purchase them.

Contract for Purchase— Valuation to be Determined by Valuers— Submission to Arbitration.— A provision in a contract for the purchase of property at a valuation to be determined by the appraisement of third parties is not an agreement for a submission to arbitration; and in making their valuation the valuers are not subject to the rules which govern arbitrations, and may make their decision without being sworn, and without giving notice to the parties affected, or according them an opportunity to be heard, unless such notice and hearing be required by express provision or reasonable implication.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*E. W. McGraw*, for Appellant.

The complaint shows no title or right to sue in the plaintiff, as the assignment of the lease did not transfer to it either the ownership of the buildings or the right to receive the value thereof.  (*Rooney* v. *Crary*, 8 Ill. App. 330; *Hayes* v. *N. Y. Min. Co.*, 2 Col. 273; *Alexander* v. *Touhy*, 13 Kan. 64; *Randolph* v. *Helps*, 9 Col. 29; *Demarest* v. *Willard*, 8 Cow. 205; *Hyatt* v. *Vincennes Nat. B'k*, 113 U. S. 408; *Ombony* v. *Jones*, 19 N. Y. 235; *Adams* v. *Goddard*, 48 Me. 212.)   The lease provided for an arbitration, and the submission of the question of

value should therefore have been in writing. (Code Civ.
Proc., sec. 1282; *Lorenzo* v. *Deery*, 26 Hun, 450; *Dickinson*
v. *R. R. Co.*, 7 W. Va. 421; *Thomas* v. *W. J. R. R. Co.*,
24 N. J. Eq. 567; *Underhill* .v. *Van Courtlandt*, 2 Johns.
Ch. 339; *Van Courtlandt* v. *Underhill*, 17 Johns. 405;
*Brown* v. *Lyddy*, 11 Hun, 451.) The defendant was also
entitled to notice of the meeting of the arbitrators, and
an opportunity to be heard. (*Dormoy* v. *Knawer*, 55
Iowa, 722; *Wood* v. *Helme*, 14 R. I. 325; *Dreyfous* v.
*Hart*, 36 La. Ann. 930; *McMahon* v. *N. Y. & E. R. R.*, 20
N. Y. 464; *Collins* v. *Vanderbilt*, 8 Bosw. 319; *Wilson* v.
*Boor*, 40 Md. 486; *McFarland* v. *Mathis*, 5 Eng. 567;
*Cobb* v. *Wood*, 32 Me. 455; *Worthington* v. *Hewes*, 19
Ohio St. 67; *Emery* v. *Owings*, 7 Gill, 488.)

*William H. Fifield, R. Thompson,* and *William F. Gibson,*
for Respondent.

The provision in the lease was not an agreement for
submission to arbitration, and the rules which govern
arbitrations do not apply. The agreement was for a
mere appraisement of the value. (*Norton* v. *Gale*, 95 Ill.
533; 35 Am. Rep. 173; *Yeatman* v. *Clemens*, 6 Mo. App.
212; *Graf* v. *Friedlander*, 33 La. Ann. 188; *Garred* v.
*Macey*, 10 Mo. 161; *Curry* v. *Lackey*, 35 Mo. 394; *Flint*
v. *Pearce*, 11 R. I. 576; *Green & C. R. R. Co.* v. *Moore*, 64
Pa. St. 91; *Wiberly* v. *Mathews*, 91 N. Y. 648; *Kihlberg*
v. *United States*, 97 U. S. 398; *Martinsburg & P. R. R.
Co.* v. *March*, 114 U. S. 549; *Nofsinger* v. *Ring*, 71 Mo.
149; 36 Am. Rep. 456; *Ames* v. *Vose*, 71 Me. 17; *Brink*
v. *New Amsterdam F. I. Co.*, 5 Robt. 123; *Haff* v. *Blossom*, 5 Bosw. 559; *Hubbell* v. *Bissell*, 13 Gray 298.)

HAYNE, C. — This is an action to recover $6,213 upon
a contract of sale contained in a lease. The defendant
was the owner of a lot of land, and one William Perkins
was the owner of certain buildings upon it. This being
the situation of the parties, they entered into a contract

by which defendant leased the land to Perkins at a rental of $120 per month, and which contained a provision that the buildings should stand as security for the rent, and that at the expiration of the term Perkins should have the option either to remove the buildings, or to require defendant to take them at a valuation "to be ascertained by two persons, one to be chosen by each party; and in case the persons so chosen disagree, those two shall choose an umpire, whose decision shall be final and binding on the parties hereto and their legal representatives."

Afterward, Perkins, with the consent of the defendant, executed the following paper: "For value received, I hereby sell and assign all my right, title, and interest in and to the within lease to the California Annual Conference of the Methodist Episcopal Church."

At the expiration of the term plaintiff and defendant each selected a person to ascertain the value of the buildings; and they (not being able to agree) selected an "umpire," who decided that the value was $6,213. Defendant refusing to pay, the plaintiff brought this action for the amount. The court below gave judgment for the plaintiff, and the defendant appeals.

1. The point is made that the assignment was not sufficient to pass the right to the contract of purchase. The argument is, that the right of purchase was a distinct thing from the "lease"; that the title to the buildings was in Perkins; that he did not lease his own property from himself, but only *the land* of the defendant; and that the assignment was only of "the within lease," no words of conveyance of the buildings being used; that therefore the title is still in Perkins, and the plaintiff has nothing to sell.

This argument is exceedingly plausible, but we do not think it is sound. The parties to the assignment certainly supposed they were transferring the lessee's right in relation to the buildings; for it does not appear

the land had any use as distinct from the buildings. A town lot covered with buildings could not well have such distinct use as long as the buildings remained upon it, which, in this case, was to be until the expiration of the lease. But if the ownership of the buildings remained in the assignor, the right to use them would remain in him also; and upon this theory the assignee contracted for a barren right.

We do not think this was the intention of the parties. It seems to us that they intended to transfer the ownership of the buildings, and that the assignment does not defeat this intention. The original parties called their contract a lease. The stipulation not to "assign this lease" without the consent of the lessor certainly included the provision in relation to the buildings. "Lease" was their name for the contract. And the parties to the assignment used the word in the same sense. "The within lease" was their phrase for "the within contract." And this meant the *whole* contract, including the provision as to the sale of the buildings. In other words, the original lessee assigned to the plaintiff the right to compel the defendant to purchase the buildings at a valuation.

But in order to compel the defendant to purchase the buildings, the plaintiff must have been in a position to sell them. Such a right assumes their ownership. One thing is necessarily implied from the other. Inasmuch, therefore, as it necessarily appears from the writing that it was the intention of the parties to transfer the ownership of the buildings, we think it must be held that such ownership was transferred. This was the practical construction of the parties, including the defendant; for he joined with plaintiff in appointing appraisers preparatory to purchasing from plaintiff the ownership which he now says plaintiff never had.

The cases cited for the appellant do not conflict with this conclusion. For in none of them, except *Bar-*

*roilhet* v. *Battelle*, 7 Cal. 450, was there an assignment of a contract containing a right of sale to the lessor. In *Barroilhet* v. *Battelle*, the lease contained such a right; but this feature was not considered; the case related solely to the lien of the lessor upon the building as security for the rent due. The case of *Demarest* v. *Willard*, 8 Cow. 205, which is most relied upon, simply held that a transfer, by the lessor, of the lease was not a transfer of the reversion. There was no covenant similar to the one above mentioned.

2. The appellant makes several points which turn upon the question whether the agreement of the parties is to be considered to be a submission to arbitration in the proper sense of the term. If it was such, then the arbitrators should have been sworn (*Day* v. *Hammond*, 57 N. Y. 482; 15 Am. Rep. 522), the parties should have had notice of the meeting of the arbitrators and an opportunity to be heard (*Curtis* v. *Sacramento*, 64 Cal. 102); and it is probable that the agreement did not constitute a sufficient submission in writing, — the appointment of the individuals chosen not having been in writing. The question presented then is, whether the agreement amounts to a submission to arbitration.

There are two time-honored rules in relation to arbitrators,—one that courts will not enforce an agreement to submit to arbitration, or in other words, that it can be revoked; and the other that arbitrators must give notice of their sessions so as to afford the parties a right to be heard. These rules rest upon the same idea, viz., that an arbitration is a substitute for proceedings in court. It being considered against sound policy to allow parties to deprive themselves of their right of resort to the courts, agreements to that effect are not binding so long as they are executory; but if the parties choose to resort to other tribunals, such tribunals are held to the more important rules which govern courts in their proceedings.

It was found, however, that to apply the above rules to all agreements in which parties regulated their action by the determination of third persons would interfere with the ordinary transactions of mankind, and put unnecessary clogs upon business. Accordingly, in the well-considered case of *Scott* v. *Avery*, 5 H. L. Cas. 811, it was held that a condition in a policy of insurance in a mutual company that the loss should be "ascertained and settled by the committee" was not a submission to arbitration in its proper sense, but was a condition precedent to the right of action. Similar decisions have been made in this and other states. (*Holmes* v. *Richet*, 56 Cal. 307; 38 Am. Rep. 54; *Loup* v. *California Southern R. R. Co.*, 63 Cal. 103; *Cox* v. *McLaughlin*, 63 Cal. 207; *Old Saucelito Co.* v. *Commercial Co.*, 66 Cal. 253; *Adams* v. *South British Ins. Co.*, 70 Cal. 198; *Carroll* v. *Girard Ins. Co.*, 72 Cal. 297; *P. D. & H. C. Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250; *Hudson* v. *McCartney*, 33 Wis. 344; *Haley* v. *Bellamy*, 137 Mass. 359; *Flint* v. *Pearce*, 11 R. I. 577; *Gauche* v. *London Ins. Co.*, 10 Fed. Rep. 355; *Fox* v. *R. R. Co.*, 3 Wall. Jr. 245.)

These cases hold that a contract by which the value of property or the amount of damage is, for the purpose of the contract, to be fixed by third persons, is not a submission to arbitration, and therefore to enforce it does not trench upon the jurisdiction of the courts. Now, if this is so,—if such a proceeding is not analogous to the investigation by a court of a controversy between the parties,— why need it be conducted according to the rules which govern courts in their investigations? We think that it need not; that the proceeding is a mere appraisement or valuation, which, although binding upon the parties, is not the submission of a controversy to arbitration, and is, therefore, not subject to the rules which govern arbitrators. And to this effect are the best, considered cases.

The precise point was decided, after careful considera-

tion, in *Norton* v. *Gale*, 95 Ill. 533; 35 Am. Rep. 173. The counsel for the appellant admits this to be a case in point, but characterizes it as a "lonesome American case." But it is not so lonesome. There are cases which are similar in principle both in England and America.

In *Collins* v. *Collins*, 26 Beav. 306, the parties agreed upon a sale of real property at a price to be fixed by valuers, one of whom was to be selected by each party, and the persons so selected were to choose an umpire. They failed to choose an umpire, and the question was, whether the case was within an act of Parliament which provided that "if in any case of arbitration" there was a failure to appoint an arbitrator, the court might appoint one upon application. It was held that the proceeding was not an arbitration. And Sir John Romilly, M. R., said: "It appears to me that the case of *Leeds* v. *Burroughs* draws the proper and fit distinction between an arbitration in the proper sense of the term and an appraisement or valuation, for valuation undoubtedly precludes differences, and does not settle any which have arisen. That is the distinction which, in my opinion, exists between those cases of appraisement and those of valuation." (See also *Bos* v. *Helsham*, L. R. 2 Ex. 78, 79; *Eads* v. *Williams*, 31 Eng. L. & Eq. 203.)

In *Curry* v. *Lackey*, 35 Mo. 394, the agreement was that the price of a slave to be taken in payment for another slave was to be fixed by a third party. It was held that this third party was not an arbitrator, and, therefore, that he need not be sworn. The court said: "A reference to arbitration occurs only where there is a matter in controversy between two or more parties. In this case there was no controversy."

In *Green* v. *Moore*, 64 Pa. St. 90, 91, the agreement was for the purchase of a stock of horses, etc., at a price to be fixed by three disinterested persons, to be selected as

provided by the contract. If this was a simple contract, the claim was barred by the statute of limitations; otherwise, if the determination of the third persons was an award. It was held to be a simple contract, and not an award. And Sharswood, J., delivering the opinion, said: "An award is the judgment of a tribunal selected by the parties to determine matters mutually at variance between them,— not merely to appraise and settle the price of property contracted for under the stipulation that this term of the contract was to be so ascertained. Had the parties made the contract, and afterward, on a dispute arising, chosen arbitrators to determine what was due upon it, that might have been an award. The case is entirely different where the parties originally agree to buy and sell at a sum to be fixed by an appraisement to be made by a third person or persons. When the original contract is established by competent and sufficient evidence, then, indeed, the assessment thus made by the authority of the parties, or by authority of law, as in the case of the justice of the peace, may be conclusive as to the price; but there is nothing in the transaction to conclude the parties as to anything else. They may fall back,—dispute the existence of any contract at all,—or prove that it was tainted with fraud or illegality. Here is a clear and palpable distinction between such an appraisement and an award."

So in *Palmer* v. *Clark*, 106 Mass. 389, where certain work was to be paid for according to the certificate of a specified engineer, it was held to be no objection that the certificate was based upon the notes by a deputy of measurements made in the absence of the engineer. The court, per Colt, J., said:—

"A reference to a third person to fix by his judgment the price, quantity, or quality of material, to make an appraisement of property and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in

many respects from an ordinary submission to arbitration. It is not revocable. The decision may be made without notice to or hearing of the parties, unless such notice and hearing be required by express provision or reasonable implication; and it may be made upon such principles as the person agreed on may see fit honestly to adopt, or upon such evidence as he may choose to receive." (See also *Garrard* v. *Macy*, 10 Mo. 164; *Willingham* v. *Veal*, 74 Ga. 759; *Gustaveson* v. *McGay*, 12 Daly, 427.)

It is quite true that the facts of the cases above quoted are not absolutely identical with the facts of the case before us. But they proceed upon the same principle, and that makes them authority here.

It must be admitted that there are cases to the contrary. But in most of them the distinction does not seem to have received attention. And the cases in which the distinction was noticed do not seem to us to be well reasoned. Certainly, if parties expressly say in their agreement that the "arbitrators" are to determine the question upon their own skill and judgment without examining witnesses or hearing argument, there could be nothing to prevent such agreement from being carried out. And if this can be expressed, it can in a proper case be implied. This is recognized in some of the cases cited for the appellant. Thus in *Wilson* v. *Boor*, 40 Md. 488, 489, the court said: " Parties may waive notice, or *the case may be of such a character as not to require notice.*" (See also *Wiberly* v. *Matthews*, 91 N. Y. 649.)

This seems to be sufficiently obvious. And if so, it is a mere question as to the intention of the parties in each case. They could stipulate for the formalities of an arbitration if they chose to do so. But in a case like the present, where the reference to a third person is provided for in a contract made long before any controversy arises, which contract is made upon valuable consideration other than the mutual promise to submit to the de-

cision of the third party, the decision being merely one link in the chain of the claim, we think that the proceeding is not an arbitration, and in the language of the supreme court of Massachusetts, above quoted, the decision may be made without notice or hearing, " unless such notice and hearing be required by express provision or reasonable implication."

Such a rule seems to us to accord with the intentions of business men in the great majority of cases. Such transactions are very common. So much so that a provision has found its way into the code that where the consideration of a contract is executory, " it may be left to the decision of a third person." (Civ. Code, sec. 1610.) Surely it could not have been the meaning that the omitted term was to be settled by a proceeding in the nature of a suit between the parties. In this regard, Robertson, C. J., delivering the opinion of the supreme court of New York, to the effect that a reference to a third person to fix the amount of loss under a policy of insurance was not within the rule that one partner could not bind the firm by a submission to arbitration, said: "There is scarcely a day in which in commercial transactions the valuation of property, or estimate of damages, is not intrusted to third parties, and no one has yet dreamed of looking upon them as arbitrations, and subjected to all the formalities imposed on them by the Revised Statutes, with the paraphernalia of oaths, witnesses, and notices of trials. It is most frequently confided to the personal skill, knowledge, or experience, or even acquired information, of appraisers." (*Brink* v. *N. A. Fire Ins. Co.,* 5 Robt. 123.)

This was the practical construction put upon the contract by the parties here. For the defendant "was present one day there," but made no offer of evidence or request to be heard

3. Several other points are made by the learned counsel for the appellants, which may be mentioned briefly:—

(*a*) It is said that there is nothing to show that the plaintiff entered into possession of the premises, and that therefore there was no privity between it and the lessor. But the complaint alleges that Perkins entered into possession, and that " he *and his assignee* continued in said possession to the end of the term." The averment in the answer related to the possession of Perkins " since the termination of said lease," which is quite a different matter. Assuming, therefore, that the objection is good in point of law, it has no foundation in fact. If the assignee went into possession of the premises under the lease, it does not matter that Perkins remained there also.

(*b*) It is objected that the rent due at the expiration of the lease was not paid. The complaint alleges that the rent was paid by the plaintiff and Perkins. The answer denies that it was paid by the plaintiff. This admits that it was paid. If the " rent" was paid, it is immaterial which of the persons in possession paid it. The defendant is not entitled to have it paid twice.

(*c*) There was probably a variance in proving a reduced rent without pleading the agreement of reduction. But under the circumstance, it could not have misled the defendant to his prejudice, and therefore it is to be disregarded. (Civ. Code Proc., sec. 469.)

(*d*) The testimony of the witness Wilcox was merely as to the fact of his selection as " arbitrator." And this being so, it was properly admitted. The objection was in effect to the form of the question.

The other points do not require special mention.

We therefore advise that the judgment and order denying a new trial be affirmed.

Foote, C., and Belcher, C. C., concurred.

The Court.—For the reasons given in the foregoing opinion, the judgment and order denying a new trial are affirmed.

Hearing in Bank denied.