## LUEDINGHAUS LUMBER CO. et al. v. LUEDINGHAUS et al. *

(Circuit Court of Appeals, Ninth Circuit. May 12, 1924.)

### No. 4166.

1. Appeal and error ⬤⇒158(1)—Making of payments found due on contract by decree held not to bar right of appeal.

The making by a party of payments found by a decree to be due on a contract for the purpose of preserving rights under the contract, *held* not such a compliance with the decree as to bar the right to appeal therefrom.

2. Logs and logging ⬤⇒3(10)—Provision of contract for estimation of timber by three cruisers held not an agreement for "arbitration."

Provision of a contract for sale of standing timber that each party should appoint a cruiser to determine the quantity, and that in case of their disagreement they should appoint a third, the finding of two to be binding on the parties, *held* not an agreement for "arbitration," but for appraisal, and not revocable by either party.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arbitration.]

3. Logs and logging ⬤⇒3(10)—Appraisal of standing timber held not in compliance with contract.

A contract for sale of standing timber provided that each party should appoint a man to cruise the timber, and in case of their disagreement as to quantity they should select a third man, and the decision of two of the three should be binding on the parties. The two appointed agreed on a third man in advance, but the cruiser appointed by the seller became ill before completing the work, and another was appointed in his stead, who made the cruise. *Held,* that the contract contemplated the selection of a third man by the two who actually made the first cruise, and then only after it was made and in case of disagreement between them; that the decision of the buyer's cruiser and the third man so selected beforehand, in whose selection the seller's substitute cruiser refused to concur, was not in accordance with the contract and not binding on the parties.

4. Logs and logging ⬤⇒3(10)—Quantity of standing timber sold must be determined in the manner provided in the contract.

Where a contract for sale of standing timber provided the manner in which the quantity should be determined, each party has a vested right to have it determined in that manner, and a court is without authority to make such determination, or to have it made otherwise, and can only decree specific performance of the contract in that respect.

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by F. W. Luedinghaus and others against the Luedinghaus Lumber Company and another. From the decree, defendants appeal. Remanded, with direction to modify decree.

The appellees brought a suit against the appellants to cancel a contract. The appellant the Luedinghaus Lumber Company by cross-complaint sued for specific performance of the contract. The contract was made on October 4, 1919. It provided for the sale and transfer to the lumber company of a sawmill, a shingle mill and other buildings, and various tracts of land. In paragraph II it was recited that the appellees owned certain described timber lands. Paragraph VIII provided as follows:

"The vendors estimate that there is 100,000,000 feet of timber on the lands described in paragraph II hereof, and it is understood and agreed that in the event that when said timber is cruised if there is not the above amount of 100,000,000 feet thereon, the vendors agree to purchase in the immediate vicinity of the above described and referred to lands an amount of timber sufficient to bring the total amount of timber up to 100,000,000 feet, and to convey good title thereto to the company by proper legal instruments, and these instruments of conveyance shall be placed in escrow as provided in paragraph X of this agreement. Such purchases shall be made and the deeds placed in escrow as aforesaid within 12 months from the date hereof. The vendors reserve the option, if they do not desire to purchase and deliver conveyances for sufficient timber to bring the total amount aforesaid up to 100,000,000 feet, to allow a credit on note No. 19 for the shortage, computed at the rate of $2.50 per 1,000 feet. If the cruise shall disclose that there is on said lands timber in excess of 100,000,000 feet, the company agrees to pay the vendors for the excess at the rate of $2.50 per 1,000 feet. The cruise provided for in this paragraph shall be made by a competent cruiser employed by the vendors, and the company shall employ a competent cruiser to check the cruise of the vendors, and, if any difference between the cruisers arise, the two cruisers aforesaid shall select a third cruiser, and the three cruisers shall thereupon determine the amount of timber on the lands. A decision of a majority of the three cruisers shall be accepted as a true and correct cruise, and binding on the parties hereto."

The total contract price was $515,000, of which $50,000, was paid in cash on the execution of the contract. Provision was made for payment of the remainder in installments. The appellees in their complaint alleged breach of the contract by the lumber company, in that the company had failed to cut timber on section 32, whereas the contract required that such timber should be cut and paid for to the appellees at $3.50 per thousand in reduction of one of the notes representing the purchase price; also in that the lumber company had torn down and removed a shingle mill on said premises without the appellees' consent, and had refused and failed to pay notes when due as provided in the contract. There were other allegations of breach. The appellees prayed for cancellation of the contract, and for such other relief as the court might determine they were entitled to.

The lumber company answered, denying that it had violated the provisions of the contract, and it presented a cross-complaint in which it alleged breach of the contract by the appellees, in that they failed to furnish abstracts of title to the property sold within the time agreed, and that some of the abstracts failed to show a merchantable title; that the timber lands referred to in paragraph VIII were cruised by three cruisers, and the amount of timber thereon ascertained to be but 60,745,000 feet, being a shortage of 39.255,000 feet, on account of which the lumber company was entitled to a credit of $98,137.50 upon note No. 19. The prayer of the cross-bill was that the cruise so alleged to have been made under the provisions of paragraph VIII of the contract be decreed to be conclusive upon the parties, that the lumber company have a credit of $98,137.50, with interest, upon its notes, and that the appellees specifically perform the contract by deeding all of the lands and by furnishing abstracts thereto showing merchantable title.

Upon the pleadings and the proof the court held that the provision of paragraph VIII amounted to an agreement to arbitrate, and that it was subject to abrogation by the appellees, but by its decree the court denied the cancellation and surrender of the contract.

W. H. Abel, of Montesano, Wash., and A. A. Hull and J. E. Murray, both of Chehalis, Wash., for appellants.

F. D. Oakley, of Tacoma, Wash., and J. B. Howe, of Seattle, Wash., for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] A motion to dismiss the appeal is based on three grounds: First, that the transcript was not filed in this court until after the return day of the citation, and no legal orders were entered extending the time for filing the same. But it appears from the record that the reason why the transcript was not filed on or before the return day was that the appellees procured ex parte orders from the trial court extending their time to propose amendments to the statement of the testimony. Those orders by their own force extended the time for filing the transcript. Second, it is said that the appellants waived their right of appeal by complying with the decree. What the appellants did was to make certain payments, so as not to jeopardize their rights under the contract with the appellees. In so doing there was no waiver of the right to appeal. Josevig-Kennecott Copper Co. v. Howarth Co. (C. C. A.) 261 Fed. 567; Hoogendorn v. Daniel, 202 Fed. 432, 120 C. C. A. 537; Dakota County v. Glidden, 113 U. S. 222, 5 Sup. Ct. 428, 28 L. Ed. 981. Equally without merit is the third ground for dismissal, that the decree is not final. The decree finally disposed of the principal contentions between the parties, as will more fully appear upon the discussion of the merits of the controversy. The motion is denied.

[2] We are unable to agree with the court below that the provision in the contract for the determination of the amount of timber on the lands was an agreement to arbitrate a dispute should one arise between the parties, or that the effect of the agreement and the question of its revocability are determinable by the rule of the common law as to arbitration and award. Arbitration presupposes a dispute and is a recognized common-law method of settling disputes and controversies. If there is no matter in dispute, there is no question for arbitration. Omaha v. Omaha Water Co., 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991. There is a broad distinction between a submission to arbitration and a provision for incidental appraisement or measurement. Said the court in Palmer v. Clark, 106 Mass. 373:

"A reference to a third person to fix by his judgment the price, quantity, or quality of material, to make an appraisement of property and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in many respects from an ordinary submission to arbitration. It is not revocable."

In Noble v. Grandin, 125 Mich. 383, 84 N. W. 465, in a contract for the sale of land, an agreement was made that the amount of merchantable pine timber standing thereon should be estimated by three appraisers. The court held that the agreement was not for an arbitration, but for an appraisement, and held that the agreement was a collateral part of the contract, and not revocable by either party. In Green & Coates, etc., Ry. Co. v. Moore, 64 Pa. 79–91, Judge Sharswood said:

"An award is the judgment of a tribunal selected by the parties to determine matters actually in variance between them—not merely to appraise and settle the price of property contracted for under the stipulation that this term of the contract was to be so ascertained."

299 F.—8

In Martin v. Vansant, 99 Wash. 106, 168 Pac. 990, Ann. Cas. 1918D, 1147, it was held that an agreement in advance, before a dispute has arisen, to submit to appraisers the value and price of land held under option to purchase, is not an agreement to submit an existing controversy to arbitration, and is therefore not subject to revocation by one of the parties, but is an irrevocable agreement, upon which specific performance may be decreed. Among the cases affirming these principles are Toledo S. S. Co. v. Zenith Transp. Co., 184 Fed. 391, 106 C. C. A. 501; Irwin v. Hoyt, 162 Iowa, 679, 144 N. W. 584; Willingham v. Veal, 74 Ga. 755; California M. E. Conference v. Seitz, 74 Cal. 287, 15 Pac. 839; Guild v. Atchison, T. & S. F. R. Co., 57 Kan. 70, 45 Pac. 82, 33 L. R. A. 77, 57 Am. St. Rep. 312; Omaha Water Co. v. City of Omaha, 162 Fed. 225, 89 C. C. A. 205, 15 Ann. Cas. 498.

[3] Nor can we agree with the appellants that an appraisement was had in compliance with the terms of the contract. After considerable delay the appellees appointed one Dodwell as their cruiser. The Lumber company appointed Harris. Dodwell, before completing his cruise, was taken seriously ill. He and Harris had an understanding that Duval should be the third cruiser, but such understanding was premature, as under the contract the third cruiser was to be appointed in case only of disagreement between the first cruisers. After Dodwell was taken ill, the appellees appointed De Merritt as their cruiser. De Merritt made his cruise and gave the lumber company a statement thereof. Thereafter De Merritt and Harris verbally agreed upon Duval as the third cruiser, but immediately thereafter De Merritt revoked the agreement. The appellees and De Merritt refused to accept Duval, and urged Harris to consent to the selection of another as the third cruiser. Harris refused, and he and Duval made their report independently of De Merritt. The contract provided that a cruise should first be made by a cruiser employed by the appellees, that the lumber company should employ a cruiser to check his cruise, and that in case of difference between them the two cruisers should select a third, and that the three should thereupon determine the amount of timber. It is clear from the evidence that the third cruiser was never selected in the manner contemplated by the contract. The two cruisers who were authorized to select the third were the two cruisers who made a cruise for the respective parties. Dodwell never made the cruise for the appellees, and he was not authorized to join in the selection of the third cruiser. De Merritt did make it, and he was the only person authorized to act with the lumber company's cruiser in selecting the third. He never did join in that selection, or, if he did, he recalled his action before anything was done under it.

It is true that in cases of appraisal the appraisers are not governed by the rules relating to arbitrators. "As long as appraisers act honestly and in good faith, they have a wide discretion as to their methods of procedure and sources of information." Omaha Water Co. v. City of Omaha, 162 Fed. 225, 89 C. C. A. 205, 15 Ann. Cas. 498. Monidah Trust Co. v. Arctic Const. Co. (C. C. A.) 264 Fed. 303. And the award of appraisers is not to be vacated for mere errors of judg-

ment upon questions of fact. Goddard v. King, 40 Minn. 164, 41 N. W. 659; James v. Schroeder, 61 Mich. 28, 27 N. W. 850. And if the award is within the contemplation of the contract, and contains the honest decision of the appraisers, it will not be set aside. But here there never was an agreement that Duval should act as the third appraiser, and an appraisement made jointly by him and the lumber company's cruiser wholly failed to meet the requirement of the contract. Either party could disregard it, or could invoke the aid of equity to set it aside. Sholz v. Mills, 176 Mo. App. 352, 158 S. W. 696.

[4] The parties to the suit, possessing as they did the vested right to have an appraisement made in the manner prescribed by the contract, fixing the quantity of timber involved in the transfer, neither party could be deprived of that right by a judicial decision in the present case. The lumber company had not abandoned that right. And there was no allegation in the pleadings nor facts developed in the case to give the trial court jurisdiction to direct that a cruise of the timber be made in disregard of the provisions of the contract, or to adopt any such cruise made under the court's order as the measure of the lumber company's liability to the appellees. Upon the pleadings and the facts we think the trial court should have directed the specific performance of the agreement for appraisement.

We find, as did the court below, that there was failure of full performance of the contract, both by the appellees and the lumber company; but we are of the opinion that the deposits made by the lumber company and the tenders of payment which it made to the appellees should in equity be held to have stopped the running of interest upon the amounts so deposited and tendered, and that, in view of the default of both parties to the contract, costs were not, in equity, recoverable by either party in the court below.

The cause is remanded, with instructions to modify the decree as herein indicated.